UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTOPHER DAVID,

                        Plaintiff,

v.                                                                  7:16-CV-1121
                                                                    (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                                OF COUNSEL:

STANLEY LAW OFFICES                                         STEPHANIE VISCELLI, ESQ.
  Counsel for Plaintiff
215 Burnet Avenue
Syracuse, NY 13203

U.S. SOCIAL SECURITY ADMIN.                                 DANIELLA M. CALENZO, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Christopher David

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the

pleadings and Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 14, 18.)  For the

reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied, and

Defendant's motion for judgment on the pleadings is granted.  The Commissioner's decision

denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.       RELEVANT BACKGROUND

### A.       Factual Background

Plaintiff was born in 1987, making him 26 years old at the alleged onset date and 28 years old at the date of the ALJ's decision.  Plaintiff reported obtaining an IEP high school diploma.  The ALJ found he has past relevant work as a newspaper laborer.  Generally, Plaintiff alleges disability due to a speech impediment, learning disability, and memory problems.

### B.       Procedural History

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on April 18, 2013, alleging disability beginning that date.  Plaintiff's application was initially denied on August 30, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ John P. Ramos on January 13, 2015.  On February 25, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 11-22.)[1]  On July 22, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-3.)

### C.       The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law.  (T. 13-21.)  First, the ALJ found Plaintiff was insured for disability benefits under Title II until June 30, 2014.  (T. 13.)  Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date.  (T. 14.)  Third, the ALJ found that Plaintiff's depressive disorder, anxiety disorder, personality disorder, and history of learning

---

[1]       The Administrative Transcript is found at Dkt. No. 13.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

disorder are severe impairments, while his speech impediment, back impairment, hypertension, and obesity are not severe impairments. (T. 14-15.) Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 15-17.) Specifically, the ALJ considered Listings 12.02 (organic mental disorders), 12.04 (affective disorders), 12.05 (intellectual disability), and 12.08 (personality disorders). (*Id*.) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> a full range of work at all exertional levels including the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact with others to the extent necessary to carry out simple tasks; and handle reasonable levels of simple, work-related stress in that he can make decisions directly related to the performance of simple work and handle usual work place changes and interactions associated with simple work.

(T. 17.) Sixth, the ALJ found that Plaintiff remains capable of performing past relevant work as a newspaper laborer with the above limitations. (T. 20.) Seventh, and finally, the ALJ alternatively found that Plaintiff remains able to perform a significant number of other jobs in the national economy, as the non-exertional limitations in the RFC would have little or no effect on the occupational base of unskilled work at all exertional levels. (T. 21.) The ALJ therefore concluded that Plaintiff is not disabled.

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff makes three arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ did not rely on any opinion from a medical professional. (Dkt. No. 14, at 4-7 [Pl. Mem.

of Law].)  More specifically, Plaintiff argues that the ALJ erred in failing to afford greater weight to the opinions from treating physician Sadaqat Khan, M.D., and consultative examiner Richard Oman, Ed.D., rather than affording significant weight to the opinion from the non-examining State Agency medical consultant.  (Dkt. No. 14, at 5-7 [Pl. Mem. of Law].)

Second, Plaintiff argues that the ALJ failed to apply the relevant legal standard when assessing credibility.  (Dkt. No. 14, at 7-8 [Pl. Mem. of Law].)  Specifically, Plaintiff argues that the ALJ did not apply any of the required regulatory factors and instead relied on boilerplate language.  (Dkt. No. 14, at 8 [Pl. Mem. of Law].)

Third, Plaintiff argues that the ALJ erred in failing to consult a vocational expert at Steps Four and Five based on the existence of non-exertional impairments, particularly those outlined in the physician opinions that Plaintiff argues were improperly weighed as well as those in Plaintiff's testimony.  (Dkt. No. 14, at 9 [Pl. Mem. of Law].)  Plaintiff also argues that the ALJ erred in finding Plaintiff's work as a newspaper laborer was past relevant work because he was assisted and supervised by his mother while doing that job.  (*Id.*)

Generally, Defendant makes three arguments in support of her motion for judgment on the pleadings.  First, Defendant argues that the RFC finding is supported by substantial evidence. (Dkt. No. 18, at 5-13 [Def. Mem. of Law].)  More specifically, Defendant argues that the ALJ properly relied on the opinion from State Agency psychological consultant Dr. Totin because that opinion was consistent with the evidence in the record, including the medical evidence and Plaintiff's reported daily activities.  (Dkt. No. 18, at 5-8 [Def. Mem. of Law].)  Defendant also argues that the ALJ properly afforded limited weight to the opinions from Dr. Khan and Dr. Oman because he provided appropriate reasons supported by substantial evidence for those findings.  (Dkt. No. 18, at 8-13 [Def. Mem. of Law].)

Second, Defendant argues that the credibility finding is supported by substantial evidence, noting that Plaintiff did not adduce any specific ways in which the credibility finding was erroneous or deficient.  (Dkt. No. 18, at 13 [Def. Mem. of Law].)  More specifically, Defendant argues that the ALJ considered Plaintiff's daily activities, his part-time work activity, unremarkable mental status examinations, and other medical evidence that provide substantial support for his finding.  (Dkt. No. 18, at 13-14 [Def. Mem. of Law].)

Third, Defendant concedes that the record was insufficient for the ALJ to determine that Plaintiff's newspaper delivery job had been past relevant work, but argues that this error is harmless because the ALJ nonetheless proceeded to Step Five.  (Dkt. No. 18, at 14-15 [Def. Mem. of Law].)  Defendant argues that the alternative Step Five finding based on the Medical-Vocational Guidelines is supported by SSR 85-15, which outlines the basic mental demands of unskilled work.  (Dkt. No. 18, at 15 [Def. Mem. of Law].)  Defendant argues that SSR 85-15 provided sufficient guidance such that the ALJ was not obligated to seek testimony from a vocational expert.  (Dkt. No. 18, at 15-16 [Def. Mem. of Law].)

## II.      RELEVANT LEGAL STANDARD

### A.      Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.  ANALYSIS

### A.  Whether the Weight Afforded to the Opinion Evidence is Supported By Substantial Evidence and Consistent with Applicable Legal Standards

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 18, at 5-13 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), report and recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not

replacing the consideration of the treatment relationship between the source and the claimant. *See* 20 C.F.R. § 416.927(c)(1)-(6).

Plaintiff argues that the ALJ committed legal error in declining to afford greater weight to the opinions from treating physician Dr. Khan and consultative examiner Dr. Oman while relying heavily on the opinion from the non-examining State Agency psychological consultant. (Dkt. No. 14, at 5-7 [Pl. Mem. of Law].) Plaintiff argues that Dr. Khan's opinion was consistent with the marked limitations opined by Dr. Oman and with his history of disability under the Social Security Administration's child standards, his inability to hold a full-time occupation, and the fact that "the only real occupation [Plaintiff] has ever been able to perform is that of a part-time paperboy with the assistance of his mother." (Dkt. No. 14, at 6-7 [Pl. Mem. of Law].)

On July 12, 2013, Dr. Oman opined that Plaintiff was able to follow and understand simple directions, perform simple tasks, and maintain limited attention, but had a mild-to-moderate limitation in maintaining a regular schedule and marked limitations in learning new tasks, performing complex tasks, making appropriate decisions, relating adequately with others, and appropriately dealing with stress. (T. 290.) The ALJ afforded limited weight to the opinion from Dr. Oman, finding it was not consistent with the overall record, including Plaintiff's reported daily activities. (T. 19.)

On January 13, 2015, Dr. Khan noted that Plaintiff had symptoms including decreased energy, feelings of guilt or worthlessness, general persistent anxiety, mood disturbance, difficulty thinking or concentrating, impairment in impulse control, emotional lability, persistent disturbances of mood or affect, easy distractibility, memory impairment, sleep disturbance, and emotional withdrawal/isolation. (T. 317-18.) Dr. Khan opined Plaintiff had "no useful ability to

function"[2] in traveling in an unfamiliar place, and was "unable to meet competitive standards"[3]

for maintaining attention for two hour segments; maintaining regular attendance and being

punctual within customary tolerances; sustaining an ordinary routine without special supervision;

completing a normal workday or work week without interruptions from psychologically based

symptoms; accepting instructions and responding appropriately to criticism from supervisors;

getting along with co-workers or peers without unduly distracting them or exhibiting behavioral

extremes; and responding appropriately to changes in a routine work setting.  (T. 318-19.)  Dr.

Khan additionally opined that Plaintiff was "seriously limited but not precluded"[4] in working in

coordination with or proximity to others without being unduly distracted; making simple work-

related decisions; performing at a consistent pace without an unreasonable number or length of

rest periods; dealing with normal work stress; and being aware of normal hazards and taking

appropriate precautions.  (T. 318.)  Lastly, Dr. Khan opined that Plaintiff would likely be absent

from work more than four times per month due to his impairments and treatment.  (T. 319.)  The

ALJ afforded little weight to Dr. Khan's opinion based on a lack of explanation of the evidence

Dr. Khan relied on when forming that opinion, inconsistencies with Plaintiff's reported daily

activities, and the ALJ's assertion that many of Dr. Khan's responses were on issues outside of

Dr. Khan's area of expertise.  (T. 19-20.)

---

[2]       "No useful ability to function" is defined on the opinion form as "an extreme limitation, means your patient cannot perform this activity in a regular work setting."  (T. 318.)

[3]       "Unable to meet competitive standards" is defined in the opinion form as "patient cannot satisfactorily perform this activity independently, appropriately, effectively, and on a sustained basis in a regular work setting."  (*Id.*)

[4]       "Seriously limited but not precluded" is defined in the opinion form as "ability to function [] is seriously limited and less than satisfactory, but not precluded in all circumstances."  (T. 318.)

Plaintiff's arguments regarding Dr. Khan's opinion fail because the ALJ's statements show that he considered the appropriate regulatory factors and the ALJ's findings are supported by substantial evidence. The ALJ reasonably concluded that there was no clear basis for the level of restrictions Dr. Khan included in his opinion. In the opinion itself, Dr. Khan wrote "depressed mood, anxiety, difficulties with concentration, all have an impact on his functioning" as explanation for the opined limitations. (T. 319.) However, these notations do not clearly suggest that the level of functional restriction Dr. Khan opined is supported. Additionally, the treatment notes from Samaritan Family Health Center, where Dr. Khan treated Plaintiff, do not support the opined level of limitation. Dr. Khan conducted an initial evaluation on April 30, 2014, in which he observed Plaintiff was alert and oriented and had fair hygiene, good eye contact, no agitation or psychomotor retardation, no abnormal movements, a broad affect that was somewhat incongruent with his mood, no fluctuation of consciousness, the ability to spell 'house' forward and backward, good insight, and fair judgment. (T. 310.) However, Dr. Khan did note that Plaintiff was not able to recall any of three objects after a five minute time span. (*Id.*) On November 13, 2014, Dr. Khan noted Plaintiff reported "generally feeling okay," sleeping well, and being more logical rather than emotional about things recently. (T. 315.) Dr. Khan observed Plaintiff was fairly neat and cooperative with no agitation or psychomotor retardation, a broader affect than usual, grossly intact cognition, good judgment, and fair insight. (*Id.*)

Other sources at Samaritan Family Health also failed to note symptoms or findings consistent with the significant limitations in Dr. Khan's opinion. On November 25, 2013, Plaintiff reported difficulty sleeping, but Marcus Knapp, R.P.A., noted he was binge-watching television, drinking a significant amount of caffeine daily, and had an abnormal sleep schedule.

11

(T. 295.)  PA Knapp observed he had an appropriate mood and affect.  (T. 296.)  On February

26, 2014, Plaintiff reported feeling tired all the time and sleeping too much, but Parul Saxena,

M.D., observed Plaintiff had an appropriate mood and affect with no noticeable abnormalities,

and noted that Plaintiff refused to undergo a repeat sleep study.  (T. 297-98.)  On April 23,

August 27, and September 25, 2014, Plaintiff presented for physical complaints of back pain and

was noted to have an appropriate mood and affect.  (T. 300-07.)  Consistent with the ALJ's

explanation, nothing in either Dr. Khan's written statements on the opinion form or the treatment

notes from his medical practice provide an indication of what medical evidence the opined

limitations were based on.  This constitutes a good reason for affording less weight to Dr. Khan's

opinion.  *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents

relevant evidence to support an opinion, particularly medical signs and laboratory findings, the

more weight we will give that opinion [and] [t]he better an explanation a source provides for an

opinion, the more weight we will give that opinion.").

The ALJ additionally found that Dr. Khan's opinion was inconsistent with Plaintiff's

reported activities and abilities.  (T. 19-20.)  The ALJ specifically noted that his abilities to drive

a car and motorcycle independently and to independently use a GPS device to find his way to the

hearing contradicted Dr. Khan's opinion notation that Plaintiff had no useful ability to travel in

unfamiliar places.  (T. 20.)  This clear inconsistency further supports the ALJ's finding that Dr.

Khan's opinion was not supported by the overall evidence.  *See Browne v. Comm'r of Soc. Sec.*,

131 F. Supp. 3d 89, 99 (S.D.N.Y. 2015) (finding the ALJ's decision to afford less than

controlling weight to a treating physician's opinion was proper in part because that opinion was

inconsistent with the plaintiff's self-reported daily activities); *see also Ganoe v. Comm'r of Soc.

Sec.*, No. 5:14-CV-1396, 2015 WL 9267442, at *5 (N.D.N.Y. Nov. 23, 2015), report and

recommendation adopted by 2015 WL 9274999 (N.D.N.Y. Dec. 18, 2015) (noting that "[t]o be sure, an ALJ may take a plaintiff's activities of daily living into consideration as evidence which is inconsistent with a treating physician's limitations," but concluding the ALJ in that case misconstrued the reported daily activities).

Plaintiff argues that the ALJ should have afforded Dr. Khan's opinion greater weight because it was consistent with his history of disability under the Social Security Administration's child standards and his work history, but these arguments are not persuasive or consistent with the evidence.  (Dkt. No. 14, at 6-7 [Pl. Mem. of Law].)  While the record does suggest that Plaintiff had received childhood disability benefits prior to reaching the age of 18, this is not determinative proof that Plaintiff currently meets the Social Security Administration's definition of disability, as the standards used to assess child disability differ significantly from those for assessing adult disability.  *Compare* 20 C.F.R. § 416.924 ("How we determine disability for children") *with* 20 C.F.R. § 404.1520, 416.920 ("Evaluation of disability in general").  Since the ALJ was required to assess Plaintiff's applications under the adult standards, whether or not Plaintiff had previously met the child standard is of less probative value than the medical and other evidence.

Regarding Plaintiff's work history, Plaintiff's characterization of that history as indicative of an inability to work is not supported.  Although Plaintiff may be correct in noting he has never had a full-time job, he neglects to acknowledge that he testified working for the same employer as a newspaper laborer and advertisement inserter for nearly three years before being fired for what he believed was discrimination rather than poor ability.  (T. 43-44.)  In a transcript from a hearing in 2010 for a previous application, Plaintiff reported that he worked between 11 and 30 hours per week at that job, and during Christmastime he might work as many

as 41 hours per week. (T. 51, 68.) The evidence related to this job contradicts Plaintiff's assertion that "the only real occupation [Plaintiff] has ever been able to perform is that of a part-time paperboy with the assistance of his mother." (Dkt. No. 14, at 6-7 [Pl. Mem. of Law].) The overall evidence therefore does not support that Plaintiff's impairments had rendered him unable to perform even simple work activity without assistance from his mother.

Rather, as the ALJ notes, the educational and medical evidence suggests that Plaintiff's lack of motivation and effort might contribute to his alleged restricted abilities. School psychologist Carol Barkley conducted a psychoeducational evaluation in March 2005 that contained a number of notations that Plaintiff's lack of motivation and effort were making him appear less functional than his potential: she noted that sources reported his lack of motivation to improve his speech led to discontinuation of speech therapy, that he was a "capable student with potential, [but] he was not motivated and did not put in any extra effort," that he avoided doing school work, that he often attempted to use his academic disability as an excuse in his English class, and that he "could most likely obtain a high school diploma, but his lack of effort and poor motivation make it appear an [IEP] Certificate will be more likely." (T. 270-73.) Dr. Barkley noted that Plaintiff's scores on an individual achievement test involving math and language tasks were "significantly discrepant from expectations based on ability," as she had found Plaintiff had an IQ score in the low average to average range. (T. 276-77.) Dr. Barkley concluded that language difficulties along with lack of motivation significantly impacted Plaintiff's academic functioning and recommended that Plaintiff seek summer employment because "[w]hile it appears he would like to be reliant on his mother and disability income for support, he will gain valuable life experience by choosing to work." (T. 278.) Dr. Barkley's evaluation as a whole suggests that she believed Plaintiff would be capable of working in some capacity if he were to

apply himself to doing so.  Plaintiff's IEP from April 2006 notes that he had difficulties due to low motivation and effort, a low level of interest in school, refusal to complete assignments, and refusal to work with certain people when they offered him assistance.  (T. 210-11.)  More recently, on February 26, 2014, Plaintiff was noted to be overweight with sleep dysfunction, but he refused to decrease his intake of soda despite the negative health effects because he would rather "die with [a] 'happy face.'"  (T. 297.)  Throughout 2014, Plaintiff refused to follow through with a referral for physical therapy despite repeatedly reporting back pain, stating only that he did not want to pursue that until he knew what was wrong with his back.  (T. 306.)  On November 13, 2014, Dr. Khan noted he had questions as to whether Plaintiff had been compliant with his medication.  (T. 315.)  The evidence therefore supports the ALJ's inference that, contrary to Plaintiff's assertions, his lack of a full-time work history and his current participation in part-time work with his mother's assistance might be attributable more to his lack of motivation to do things he is not interested in doing rather than to limitations from his impairments.

Finally, Plaintiff does not specifically argue that Dr. Oman's opinion should have been afforded greater weight other than to assert it is consistent with Dr. Khan's opinion, and does not provide any arguments suggesting how the reasons the ALJ provided for affording limited weight to his opinion were inadequate to meet the regulatory standards for weighing opinion evidence.  (Dkt. No. 14, at 4-7 [Pl. Mem. of Law].)  As noted above, the ALJ declined to rely heavily on this opinion because he found it to be inconsistent with the overall record.  (T. 19.) This reason, supported by substantial evidence, constitutes a legally sufficient reason for declining to afford greater weight to Dr. Oman's opinion.  *See Saxon*, 781 F. Supp. 2d at 102 ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.")

(citing *Stevens v. Barnhart*, 473 F. Supp. 2d 357, 362 (N.D.N.Y. 2007)); *Aldrich v. Astrue,* 08-CV-0402, 2009 WL 3165726, at *7 (N.D.N.Y. Sept. 28, 2009) (finding that the ALJ was entitled to afford less than controlling weight to the opinion of a treating physician who appeared to rely on the plaintiff's subjective complaints more than any diagnostic or clinical evidence); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record") (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (indicating that the extent an opinion is consistent with the record as a whole is one of the factors considered when determining the amount of weight to which an opinion is entitled). Consequently, the ALJ's decision to afford limited weight to Dr. Oman's opinion is supported by substantial evidence and consistent with applicable legal standards.

For all the above reasons, the ALJ's findings related to the opinion evidence are supported by substantial evidence. Further, the evidence as a whole provides substantial support for the RFC finding. Remand is not warranted on this basis.

**B.      Whether the Credibility Finding is Supported By Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 18, at 13-14 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her

reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).  The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs*., 728 F.2d 588, 591 (2d Cir. 1984)).  Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference.  *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

Plaintiff's objection to the ALJ's credibility findings consists of a single sentence of argumentation asserting that the ALJ failed to apply any of the factors required by the regulations and instead "merely used boilerplate language that is becoming too common in ALJ decisions."  (Dkt. No. 14, at 8 [Pl. Mem. of Law].)  Plaintiff's argument is clearly contradicted by the ALJ's decision, which shows he considered the appropriate factors and provided specific reasons to support his finding.  Notably, the ALJ highlighted inconsistent statements related to Plaintiff's daily activities, statements that suggested Plaintiff's lack of motivation contributed to his alleged poor functioning, and his ability to work in the past as a janitor and a laborer, both of which he reported ended due to incidents related to discrimination against him rather than his inability to perform those jobs.  (T. 18-19.)  The evidence supporting the ALJ's findings related

to motivation and Plaintiff's work history have already been detailed in the previous section of this Decision and Order. In terms of Plaintiff's daily activities, the ALJ reasonably concluded that these reported activities were inconsistent with the level of functional limitations Plaintiff alleged. Plaintiff reported to consultative examiner Dr. Oman that he could dress, bathe, groom himself, do light cooking and food preparation, do general housecleaning, do laundry, shop for his own clothes, manage his own earnings, drive, socialize, and play video games. (T. 290.) At the physical consultation on the same date, Plaintiff reported he cooked twice per week, did not know how to clean, did laundry once per week, showered six times per week, dressed daily, watched television, and played with his phone. (T. 284.) In a written function report, Plaintiff noted he could care for his dog, perform self-care tasks, make easy meals once or twice daily, cut the lawn, do laundry, drive a car alone, shop once per week, watch television, play video games with other people, and socialize on the phone. (T. 230-35.) At the hearing, he testified he could pay his bills both online and in person, watch television, help his aunt, play video games, hunt with a friend, and ride his motorcycle. (T. 34, 37-38.) These activities are generally not consistent with the debilitating memory, concentration, and cognitive abilities Plaintiff reported, and inconsistencies are a proper consideration when making the credibility assessment. *Morris v. Comm'r of Soc. Sec.,* No. 12-CV-1795, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014) ("The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted Plaintiff's testimony regarding her symptoms to the extent that it is inconsistent with other evidence.").

For the above reasons, the credibility finding is consistent with the applicable legal standards and supported by substantial evidence. Remand is not merited on this basis.

18

**C.** **Whether the Findings at Steps Four and Five are Supported By Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 18, at 14-16 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

In order to meet the definition of past relevant work under the regulations, the work in question must have been "done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity." *Melville v. Apfel*, 198 F. 3d 45, 53 (2d Cir. 1999) (quoting SSR 82-62, 1982 WL 31386, at *1 (1982)). Past work experience is therefore not past relevant work for the purposes of the Step Four analysis unless it is considered substantial gainful activity, and the determination of whether work was substantial gainful activity requires an assessment of "how well the claimant performed her duties, whether those duties were minimal and made little or no demand on her, what her work was worth to the employer, and whether her income was tied to her productivity." *Melville*, 198 F. 3d at 53. Earnings are one indicator of substantial gainful activity, but not dispositive. *Id.*

In terms of the Step Four finding, Plaintiff argues that his work does not meet the definition of past relevant work and therefore the Step Four finding is not supported. (Dkt. No. 14, at 9 [Pl. Mem. of Law].) Defendant concedes that the record is insufficient to support a finding that Plaintiff's work as a newspaper deliverer would meet the definition of past relevant work. (Dkt. No. 18, at 14 [Def. Mem. of Law].) This Court agrees with both parties that the Step Four finding is erroneous. The ALJ noted that Plaintiff had past work as a newspaper laborer, but did not specify whether he meant that to encompass Plaintiff's work in 2009 to 2011 as an advertisement inserter/feeder, or his more recent work delivering papers; the Dictionary of

Occupational Titles ("D.O.T.") number cited in the decision appears to suggest it was intended to be the delivery job. (T. 20.) However, even if the ALJ intended to rely on Plaintiff's work as an advertisement inserter/feeder, the earnings for this job do not suggest it was performed at the level of substantial gainful activity, and therefore that job would also not appear to constitute past relevant work by definition. *See* 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). Because Plaintiff's past work does not appear to meet the requirements to qualify as past relevant work, the Step Four finding is the product of legal error.

However, as Defendant notes, this error does not necessitate remand because the ALJ proceeded to Step Five regardless and found that there were a substantial number of jobs Plaintiff could perform in the national economy despite his work-related limitations. (T. 21); *see also Miller v. Colvin*, No. 7:12-CV-0375, 2013 WL 1760856, at *5 (N.D.N.Y. Apr. 24, 2013) (noting that "a deficiency in an ALJ's step-four analysis does not require remand if the ALJ subsequently made a correct ruling at step five") (citing *Johnson v. Astrue*, No. 07-CV-0647, 2009 WL 1650415, at *6 (W.D.N.Y. June 12, 2009)). Plaintiff argues that the Step Five finding is not supported by substantial evidence because, had the ALJ made a proper credibility assessment and accounted for the non-exertional limitations contained in the rejected physician opinions, he would have been required to consult a vocational expert regarding the effect these additional non-exertional limitations would have on the occupational base of work at all exertional levels. (Dkt. No. 14, at 9 [Pl. Mem. of Law].) However, this Court has already found that the ALJ's decision to afford less weight to the more restrictive opinions from Dr. Khan and Dr. Oman is supported by substantial evidence and therefore there was no requirement for the ALJ to include in the RFC the greater non-exertional limitations that those sources opined. The ALJ cited to SSR 85-15 as authority that the mental limitations that were included in the RFC

would not prevent Plaintiff from performing the basic mental demands required for unskilled work. (T. 21); *see also* SSR 85-15, 1985 WL 56857 (1985). Because the record does not support greater non-exertional limitations than the ALJ accounted for and because the ALJ cited to an authority to support his finding that these limitations would not significantly erode the occupational base of unskilled work, the Step Five finding is supported by substantial evidence without testimony from a vocational expert. Remand is not warranted on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: October 10, 2017
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge